UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

DONNA FARLEY,

                              Plaintiff,

                -vs-                                    02-CV-0667C(SR)

CRYSTAL WILLIAMS and
U.C. LENDING,

                              Defendants.

───────────────────────────────────────

APPEARANCES:   GARVEY AND GARVEY (MATTHEW J. GARVEY, ESQ., of
               Counsel), Buffalo, New York, for Plaintiff.

               PHILLIPS LYTLE LLP (PRESTON LEE ZARLOCK, ESQ., of
               Counsel), Buffalo, New York, for Defendant U.C. Lending.


        In this action, originally filed in New York State Supreme Court and removed to this

court pursuant to 28 U.S.C. § 1441, plaintiff Donna Farley seeks money damages against

U.C. Lending and its former employee, Crystal Williams,[1] based on various claims arising

out of Ms. Williams' misuse of plaintiff's identity to open false credit accounts.  Currently

pending before the court are U.C. Lending's motions (1) for summary judgment dismissing

the complaint against it, and (2) to preclude expert testimony.  Oral argument was heard

by the court on December 19, 2005.  For the reasons that follow, U.C. Lending's motion

is granted in part dismissing the only remaining claim brought under federal law, and the

case is remanded to state court.

───────────────────

        [1]"U.C. Lending" is a d/b/a for Aegis Mortgage Corporation (Answer, Item 2).

## **BACKGROUND**

U.C. Lending is engaged in the business of issuing residential mortgages.  Ms. Williams was hired by U.C. Lending in May 2000 and worked at the Lockport branch. Charles Guarino was the Lockport branch manager in charge of hiring and firing.  Mr. Guarino reported to Stephen D'Orazio, U.C. Lending's Regional Vice President in Rochester (Item 46, ¶¶ 4-6, 10).

In June 2000, plaintiff contacted U.C. Lending by telephone to apply for a home equity loan, and spoke with Ms. Williams.  In connection with the loan application, plaintiff provided Ms. Williams with confidential information, including her name, address, telephone number, Social Security number, and wages.  Sometime later, Ms. Williams phoned plaintiff to inform her that she qualified for a home equity loan, but plaintiff told Ms. Williams she was no longer interested in obtaining a loan from U.C. Lending because she had been offered better interest rates by other lenders (Item 44, Ex. A, pp. 22-26).

In approximately November 2000, plaintiff became aware that certain credit accounts had been opened in her name by someone other than herself.  For example, the record reflects that on November 13, 2000, a credit account was opened at Value City Furniture using plaintiff's name and Social Security number, and using Ms. Williams' home address (*see* Item 53, Ex. A).  The record also reflects that between November 2 and November 12, 2000,  several purchases were made with a Citibank Platinum Select credit card issued in plaintiff's name, using Ms. Williams' home address (*id.*, Ex. C).

Upon becoming aware of these and other unauthorized credit transactions, plaintiff contacted the Lockport City Police and provided incident reports to the police identifying

the accounts in question.  She also contacted creditors and credit agencies to report the

discrepancies and to place a "fraud alert" on these accounts (*id.*, pp. 28-35).

In early 2001, the Lockport Police turned over the investigation of the matter to New

York State Police Investigator Eldred Green (*id.*, Exs. E-9 & E-10).   In July 2001,

Investigator Green contacted Mr. Guarino to provide a supporting deposition in connection

with the investigation (Item 53, Ex. B, p. 1).  Mr. Guarino stated in the deposition that in

October 2000, the Lockport office of U.C. Lending was contacted by the Fraud Division of

Citibank inquiring about the employment status of plaintiff and Ralph Knowles.  Mr. Guarino

knew Mr. Knowles was Ms. Williams' boyfriend.  Mr. Guarino became suspicious and

called Mr. D'Orazio.  Mr. D'Orazio told him he would look into the matter (Item 44, Ex. C,

pp. 21-22).  According to Mr. Guarino:

> After a few more phone calls I confronted [Ms. Williams] around the end of
> 2000 or beginning of 2001.  [Ms. Williams] told me that [she] and Ralph had
> taken in a young couple who were related to Ralph.  [Ms. Williams] explained
> that she sometimes takes work home with her and this young couple must
> [have] stolen the information from one of the files and applied for credit in the
> name of Donna Farley.  I knew that Donna Farley was a customer of [Ms.
> Williams'].

(Item 53, Ex. B, p. 1).  Mr. Guarino stated he was satisfied with Ms. Williams' explanation

that she had removed Mr. Knowles' relatives from her house and was working with the

Lockport Police regarding the credit accounts opened in the name of Donna Farley (*id*, p.

2).

Ms. Williams continued to work for U.C. Lending until May 2001, when her

employment was terminated.  In an e-mail to human resources representative James Blair

dated May 21, 2001, Mr. D'Orazio stated as follows:

This is a [personnel action request] for a[ loan officer] who was terminated this morning due to suspicion of fraud. . . . There is an ongoing criminal investigation that involves this former employee and one of U.C. Lending's former applicants. Ms. Williams is being investigated although not yet charged with stealing the identity of our former applicant in order to obtain over $40,000 of credit cards. . . . [T]he termination was done today by the Branch Manager, Charles Guarino. We only told her that we were exercising our right to sever employment without cause.

(Item 53, Ex. D).

Ms. Williams was convicted in Cheektowaga Town Court in the fall of 2001 on charges related to the fraudulent credit accounts referred to above (Item 44, Ex. B, pp. 8, 23, 33).

On June 28, 2002, plaintiff brought this action in New York State Supreme Court, Erie County, by the filing of a summons and complaint setting forth various claims against Ms. Williams and U.C. Lending based on common law theories of negligence and alleging violations of the federal Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801, *et seq.*[2] The complaint also contained a claim against Experian Information Solutions, Inc. (sued as "Experian"), a credit reporting business, brought under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*[3] By petition dated September 11, 2002, U.C. Lending removed the case to this court pursuant to 28 U.S.C. § 1441 on the basis of original federal jurisdiction arising out of the alleged GLBA and FCRA violations.

After discovery, U.C. Lending moved for summary judgment dismissing the claims against it. U.C. Lending has also moved to preclude the testimony of plaintiff's designated

---

[2]The complaint also contained fraud claims against U.C. Lending and Ms. Williams. Plaintiff's counsel conceded at oral argument that the fraud claims should be dismissed for failure to plead with the particularity required by Fed. R. Civ. P. 9(b) and state law.

[3]The action against Experian was voluntarily discontinued by stipulation and order of dismissal entered February 22, 2005 (Item 35).

expert witness, David A. Stivers, under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  Plaintiff has responded to these motions, and the court heard oral argument on December 19, 2005.

## **DISCUSSION**

As indicated above, this action was originally filed in state court, and U.C. Lending removed the case to this court pursuant to 28 U.S.C. § 1441 on the basis of original federal jurisdiction.  Section 1441 provides, in pertinent part:  "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).  The removal statute further provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded."  28 U.S.C. § 1447(c) (emphasis added). Even where the removal to federal court was not opposed by the plaintiff, the federal court is obliged to remand a case *sua sponte* when it becomes apparent that subject matter jurisdiction is lacking.  *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *Anderson v. Desai*, 2001 WL 1717303, at *1 (N.D.N.Y. December 12, 2001).

U.C. Lending alleged in its removal petition that the court had original jurisdiction based in part on plaintiff's claims under the GLBA.  The GLBA was enacted in 1999 to "provid[e] consumers with new protections with respect to the transfer and use of their nonpublic personal information by financial institutions."  H.R. Conf. Rep. 106-434, 106th Cong., 1st Sess. 1999, 1999 U.S.C.C.A.N. 245, 265.  The pertinent provisions state that

"each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information . . . ," 15 U.S.C.A. § 6801(a), and that the statute and related regulations "shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law . . . ." 15 U.S.C.A. § 6805(a).

Every case to have addressed the issue has held that the GLBA does not provide for a private right of action.  *See Menton v. Experian Corp.*, 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003); *see also Briggs v. Emporia State Bank and Trust Co.*, 2005 WL 2035038, at *2-3 (D.Kan. August 23, 2005) (finding no right of action, express or implied); *Borninski v. Williamson*, 2004 WL 433746, at *3 (N.D.Tex. March 1, 2004); *Lacerte Software Corp. v. Professional Tax Servs., L.L.C.*, 2004 WL 180321, at *2 (N.D.Tex. January 6, 2004).  This court agrees with the reasoning set forth in these cases, and concludes that a private right of action does not exist on behalf of an individual (such as plaintiff) claiming harm as the result of a financial institution's failure to comply with the GLBA's privacy provisions.

Accordingly, U.C. Lending is entitled to summary judgment dismissing plaintiff's claims under the GLBA as a matter of law.  This leaves only plaintiff's state law claims based on various theories of negligence.

Notwithstanding the elimination of all of the claims conferring original federal jurisdiction over this case, U.C. Lending urges the court to retain supplemental jurisdiction over the remaining state law claims, and to grant summary judgment in its favor dismissing

those claims as a matter of law.  Although the courts have differed in their approach, this position is generally consistent with the general rule applied in the Second Circuit that "the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, [even though] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."  *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996), *quoted in Parker v. Della Rocco*, 252 F.3d 663 (2d Cir. 2001); *cf. Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 655, 657 (2d Cir. 1996) (original jurisdiction over claims providing grounds for removal also provided basis for supplemental jurisdiction over common law claims, even after federal defendant was dropped from the case).

The court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Under subsection (c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Application of these factors in this case weighs in favor of declining supplemental jurisdiction over the remaining negligence claims.  U.C. Lending contends that these claims present no novel or complex legal issues, since it is well settled in New York that an employer cannot be held vicariously liable for the criminal acts of its employees.  However, plaintiff points out that her complaint seeks recovery against U.C. Lending based primarily on U.C. Lending's negligence in failing to safeguard plaintiff's confidential information, as well as its negligence in retaining Ms. Williams as an employee even after it was put on notice of her potential involvement in the fraudulent credit account activity.

*Young v. U.S. Dept. of Justice*, 882 F.2d 633 (2d Cir. 1989), *cert. denied*, 493 U.S. 1072 (1990), a case relied on by both parties, is instructive.  In *Young*, the Second Circuit engaged in a fairly extensive discussion about the recent development of the tort of "breach of confidence," noting the reluctance of New York courts to extend its application beyond the context of physician-patient relationships.  *Id.* at 640-42.  While indicating it was inclined to hold that the breach of confidence cause of action should not be extended to banking relationships, the circuit court also expressed its concerns about the negative impact such a holding could have on the banking industry in New York.  The circuit court ultimately decided that since a New York court would be in the best position to assess that possible impact, the federal courts should abstain from ruling on the question.  The circuit court upheld the district court's dismissal of the claim, but modified the judgment to reflect that the dismissal would be without prejudice to refile the action in state court in order to

give the New York courts the opportunity to decide this unsettled question of state law.  *Id.*
at 643-45.

The reported history of the case does not reveal whether the parties in *Young* ever
availed themselves of the opportunity presented by the Second Circuit.  More recently,
however, in *Daly v. Metropolitan Life Ins. Co.*, 4 Misc.3d 887, 782 N.Y.S.2d 530 (Sup. Ct.
N.Y. Co. 2004), the New York Supreme Court took up the "breach of confidence" issue in
the context of identity theft occurring under circumstances remarkably similar to the present
case.

In *Daly*, the plaintiff had provided personal information, including her full name, date
of birth, driver's license, and Social Security number to an insurance company in
connection with her application for a life insurance policy.  She later became aware that
this information had been misappropriated and used to create numerous fraudulent credit
accounts.  After notifying the insurance company, creditors, credit reporting agencies, and
the police, she brought an action in state court seeking money damages against the
insurance company based upon a theory of negligence in the handling of her confidential
information.  The insurance company moved for summary judgment on the ground that it
owed the plaintiff no duty to safeguard her confidential information.  The court denied the
motion, based primarily on the rationale that the rapid growth of identity theft and
associated fraud justifies judicial recognition of a duty on the part of financial institutions
to protect the confidential personal information of their customers.  Finding a breach of this
duty to be actionable in tort, and finding "considerable questions of fact concerning the
precautions taken by [the insurance company] to safeguard the plaintiff's personal

information," *id.*, 4 Misc.3d at 894, 782 N.Y.S.2d at 536, the court denied the defendant's summary judgment motion.

This is precisely the type of "breach of duty" claim sought to be asserted by plaintiff against U.C. Lending in this case, based on similar facts. Declining supplemental jurisdiction over this claim, in accordance with section 1367(c)(1), is appropriate in light of the state court's recognized emergence of "what promises to be a new area of law, namely the duties and responsibilities incidental to the safeguarding of confidential personal information," *Daly*, 4 Misc.3d at 894, 782 N.Y.S.2d at 532, as well as the Second Circuit's admonition that the federal courts should avoid ruling on an issue of state law "providing 'a tentative answer which may be displaced tomorrow by a state adjudication.'" *Young*, 882 F.2d at 644 (quoting *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

U.C. Lending also urges the court to retain jurisdiction and dismiss the case for reasons of judicial economy, convenience, and fairness. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (after dismissing federal claims, district court "must reassess its jurisdiction over the case by considering several related factors--judicial economy, convenience, fairness, and comity."). In this regard, the Second Circuit has advised that, "'in the usual case in which all federal-law claims are eliminated before trial, the balance of (these) factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003), quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, all that remains are state law claims based on negligence.  Although the case has been pending with this court for some time, and considerable effort has been expended to bring the proper parties before the court and to oversee the scheduling of discovery, very little of the court's time or resources have been devoted to the resolution of these claims.  *Cf. Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 564 (2d Cir.), *cert. denied*, 501 U.S. 1218 (1991) (judicial economy factor not controlling; it may be appropriate to relinquish jurisdiction over state law claims even where court has invested considerable time in their resolution).  Likewise, very little effort has been expended by the court to resolve the issues raised by U.C. Lending's motion to preclude the testimony of plaintiff's purported damages expert–a matter best left to the state trial court.  Discovery is otherwise complete, the issues have been narrowed, and no reasons have been advanced as to why the litigation could not proceed in state court with very little duplication of effort.  In the absence of any "exceptional circumstances" that mitigate in favor of retaining federal jurisdiction, "the principle of comity dictates that where a plaintiff's remaining claims solely sound in state law, a federal court should decline to exercise jurisdiction."  *Ofori-Tenkorang v. American International Group, Inc.*, 2005 WL 2280211, at *8 (S.D.N.Y. September 20, 2005).

Accordingly, considering all of the factors outlined in section 1367(c), including the novel issues of state law raised by plaintiff's negligence claims, the dismissal of all claims conferring original federal jurisdiction, and the interests of judicial economy, convenience, fairness, and comity, the court declines to exercise supplemental jurisdiction over the remaining claims in the case.

**<u>CONCLUSION</u>**

Based on the foregoing, U.C. Lending's motion for summary judgment (Item 43) is granted to the extent it seeks an order dismissing plaintiff's Fifth, Sixth and Seventh Causes of Action purporting to state fraud claims against U.C. Lending (*see* note 2, *infra*), and plaintiff's Twelfth and Thirteenth Causes of Action purporting to state claims under the federal Gramm-Leach-Bliley Act, and is denied in all other respects.   Since there is no longer subject matter jurisdiction over the claims in this action, and the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367, the case is remanded under 28 U.S.C. § 1447(c) to the state court in which it was originally filed.   *See Valencia*, 316 F.3d at 308 (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. at 357).   The Clerk of the Court is directed to take whatever steps may be necessary to cause the remand, and to close the file.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: December 30, 2005
p:\opinions\02-667.dec3005